UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HILLARY WALLS,

                Plaintiff,

v.

PIERCE COUNTY JAIL *et al.*,

                Defendants.

Case No. C07-5153RJB/JKA

REPORT AND RECOMMENDATION

**NOTED FOR:
April 4, 2008**

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. Before the court is defendant's motion for summary judgment (Dkt. # 78). Plaintiff has responded and asks for time to conduct additional discovery. The court has reviewed Plaintiff's filings. Additional discovery is not warranted because the new issue raised in Mr. Walls second amended complaint, (Dkt. # 58), should be dismissed as a matter of law. Discovery regarding the alleged facts is not relevant.

Having reviewed the file the court recommends defendant's motion be **GRANTED** and this action be **DISMISSED WITH PREJUDICE.**

FACTS

Plaintiff alleges he was housed at the Pierce County Jail from November 23, of 2006, until March 5,

REPORT AND RECOMMENDATION
Page - 1

2007.[1] Plaintiff alleges that during this time frame it was a common practice for "Kite Nurses" and defendants Pederson and Holmes to come into the unit and discuss an inmate's medical information with the inmate. Plaintiff alleges these discussions were in an open area where other inmates and staff could overhear the discussion. Plaintiff alleges he filed grievances over the lack of privacy and defendants Jackson, Goldsmith, Scott, Pederson, Holmes, Balderrama, Masko, and Pastor failed to investigate his grievances. Plaintiff alleges the failure to investigate his grievances violated his Fourteenth Amendment right to due process (Dkt # 58, page 1).

Plaintiff also alleges violations of his "statutory and constitutional rights because of the in which manner health care information was disclosed (Dkt # 58, page 2). Plaintiff states his Fourteenth Amendment rights and rights under the Health Insurance Portability and Accountability Act, "HIPPA"[sic] were violated by defendants practices regarding medical information disclosure. Plaintiff's final allegation is that the grievance process was "obstructed."

Defendants have moved for summary judgment and argue there is no policy or practice of the county at issue, there is no constitutional violation, defendants are entitled to qualified immunity from damages, and the Health Insurance Portability and Accountability Act, HIPAA does not create any private cause of action (Dkt. # 78, page 1). Defendants also argue there is no evidence of any conspiracy to obstruct the grievance process, and as they do not raise failure to exhaust administrative remedies as a defense plaintiff fails to state a claim for denial of access to courts.

Defendants acknowledge that kite nurses discussed medical issues with inmates in the unit. The nurses act as triage, sending cases that need to be seen at the clinic on for further treatment. They submit affidavits from medical personnel and officers. All employees sign a confidentiality agreement regarding any information that may come into their possession. Further, the kite nurses state that Mr. Walls would often interrupt them when they were seeing other patients and disclose his medical concerns. He would be told to wait his turn. The nurses spoke in "low tones," and if they believed there were any privacy concerns they would move to a "more private area or move other individuals." (Dkt. # 83, affidavit of Maggie Holmes-Strand)(Dkt # 84, affidavit of Sandra Pedersen).

---

[1] The second amended complaint actually says plaintiff was housed from November 23, 2007, until March 5, 2007. The court assumes plaintiff means November 2006.

REPORT AND RECOMMENDATION
Page - 2

The defendants admit that on one occasion a deputy sheriff, Brian Cruz, overheard two words when Mr. Walls was conversing with defendant Sandra Pedersen. Those words were "anal bleeding." The officer immediately moved away from the area and the kite nurse immediately moved to a more private area (Dkt # 81). The defendants state that since the date of that incident, February 26, 2007, defendant Pedersen has used an examination room at the request of officer Cruz (Dkt # 81, affidavit of Brian Cruz).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradict facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing

facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

DISCUSSION

1. Can plaintiff proceed under the Health Insurance Portability and Accountability Act, HIPAA.

It is now well settled law that HIPAA does not creates a private cause of action. Webb v Smart Document Solutions L.L.C, 499 F.3d. 1078 (9th Cir. 2007). Plaintiff's HIPAA claim fails as a mater of law. Defendants are entitled to summary judgement on this claim

2. The grievance process.

Plaintiff alleges a conspiracy to obstruct completion of the grievance process (Dkt # 55). The United States Constitution does not mandate that prison officials allow the filing of grievances or that a prison have a grievance system. Mann v. Adams, 855 F.2d 639 (9th Cir. 1988).

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Here, plaintiff filed this action while incarcerated and the act applies to him. The United States Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. Where exhaustion was once discretionary, it is now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (quoting Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S. at 520.

Defendants argument on this issue is persuasive. Defendants state:

> Case law states "[A prison] grievance procedure is a procedural right only, it des not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th[h] Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v.*

> *Helman*, 259 F.3d 641, 647 (7th Cir. 2001)(existence of grievance procedure confers no liberty interest on prisoner); *Mann v Adams*, 855 F.2d 639 (9th Cir. 1998). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. Also, even a failure of prison officials to address grievances, or investigate them, does not amount to a constitutional violation. *See, Booth v. King*, 346 F.Supp. 2d 751 (E.D.Pa. 2004)....

(Dkt. # 78, page 10). Defendants are entitled to summary judgment on this issue.

3. <u>Fourteenth Amendment claims and qualified immunity</u>.

The remaining Fourteenth Amendment claims address the alleged improper disclosure of medical information. The alleged disclosures were improper because the setting for health care treatment was not private. Defendants argument is two fold. They argue there is no recognized due process or privacy interest at stake and even if there were, the law is not clearly established and they are entitled to qualified immunity from damages.

Defendants state:

> ...'While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional zone of privacy, its existence is firmly established.' *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)(finding that public disclosure of an individual's social security number in a bankruptcy case improper). 'The constitutionally protected privacy interests in avoiding the disclosure of personal matters clearly encompasses medical information and its confidentiality,' *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998)(However, this case speaks of a right to privacy in the unauthorized testing of bodily fluids by employers.). Further, to show Mr. Walls' Fourteenth Amendment substantive due process rights were violated, he must show the kite nurses behavior was "so egregious, so outrageous, that it may fairly be said to shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8(1998).
>
> Finally, the protections of the Due Process Clause are not 'triggered by lack of due care by prison officials.' *Daniels v. Williams*, 474 U.S. 327, 333 (1986): *Maddox v City of Los Angeles*, 792 F.2d 1408, 1413 (9th Cir. 1986). Negligent conduct does not state a claim under § 1983 for violation of the Due Process Clause of the Fourteenth Amendment. *Daniels*, 474 U.S. at 334; *Maddox*, 792 F.2d at 1413.
>
> The facts of this case are similar to those of *Rodriguez v. Ames*, 287 F. Supp. 2d 213 (W.D.N.Y. 2003). Rodriquez filed suit for a violation of his constitutional right to privacy when defendant conducted an examination of him with his cellmate present. 287 F. Supp.2d at 215. This included a visual exam of Rodriguez's anal area, *Id*. The court Found no constitutional violation under the Fourth, Eighth, or Fourteenth Amendments.
>
> Specifically, the court found the Eighth Amendment was not violated because the exam did not constitute a 'serious deprivation of basic human needs' nor show the defendants acted with deliberate indifference. 287 F. Supp. 2d at 218-19. The court found Rodriguez was not entitled to receive care in a 'wholly private setting.' 287 F. Supp. 2d at 219.
>
> The court also found the conduct was not sufficiently shocking or egregious to amount to a Fourteenth Amendment violation. *Id.* Moreover, the court noted it would not be unusual for an inmate to see another naked and this was more of a 'minor inconvenience

and embarrassment in the context of prison life full of such things.' *Id.* Further, the court noted this condition did not rise to the level of an individual being HIV positive, or of individuals of the opposite sex viewing him naked. 287 F. Supp. 2d at 220-221. Finally, the court concluded no constitutional right was violated, stating:

> Instead, this case concerns an embarrassing circumstance of prison life that does not rise to the level of a constitutional violation. Prisoners do retain a limited right to bodily privacy, *See Covino*, 967 F.2d at 78. However, as with all constitutional rights, plaintiff retains that right in prison only insofar as it is consistent with his status as a prisoner. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). In this regard, there are many unfortunate and embarrassing circumstances prisoners must endure as part of their daily lives. Many prisoners, like the plaintiff here, share their cells with others and have very little privacy in certain daily activities. However, 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.' *Hudson v.* Mc Millian, 503 U.S. 1, 9 (1992)(quoting *Rhodes*, 452 U.S. at 347).

287 F. Supp. 2d at 220-21.

(Dkt. # 78, pages 5 and 6).

Plaintiff does not allege any named defendant intentionally disclosed medical information to others. While he alleges treating him in front of others was humiliating and caused him mental anguish the facts of this case are nowhere near as severe as the facts in Rodriguez.

The court today need not decide the exact parameters of plaintiff's right to privacy in medical information. Defendants have invoked the affirmative defense of qualified immunity from damages. Public officials who perform discretionary functions enjoy qualified immunity in a civil action for damages, provided that their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 480 (1991).

The Supreme Court established a two-part test for determining whether an official is entitled to qualified immunity. First, the Court must determine whether the facts, when taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cruz v Kauai County*, 279 F.3d 1064 (9th Cir. 2002); *Boyd v Benton County*, 374 F.3d 773 (9th Cir. 2004). Then, if a violation is articulated, the Court must ascertain whether the constitutional right at issue was "clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 201; Cruz at 1069.

The court agrees with the Western District of New York that the right to privacy in medical information

does not encompass the right to be treated in a wholly private setting. Rodriguez, v Ames, 287 F. Supp. 2d 213, 219. (W.D.N.Y. 2003). In light of this precedent, defendants could well have believed their actions constitutional. They are entitled to qualified immunity from damages. The motion for summary judgment should be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 4, 2008**, as noted in the caption.

DATED this 13 day of March, 2008.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge